UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

# 04    11423    JLT

| | |
|---|---|
| DIRECTV, Inc., a California corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR COMPENSATORY, STATUTORY AND OTHER DAMAGES, AND FOR INJUNCTIVE RELIEF** |
| v. | |
| STEVEN BETRO | |
| Defendant. | MAGISTRATE JUDGE |

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

Plaintiff, DIRECTV, Inc., through its attorneys, alleges as follows:

## INTRODUCTION:

## DIRECTV AND THE SATELLITE TELEVISION BROADCASTING BUSINESS

1.    Plaintiff, DIRECTV, a California company, operates the United States' premier digital satellite entertainment service, delivering over 225 channels of digital entertainment and informational programming to homes and businesses equipped with specialized digital satellite system equipment. DIRECTV has invested more than $1.25 billion to develop its direct broadcast satellite system.

2.    DIRECTV delivers television programming to millions of subscribers in the United States. In order to receive and view DIRECTV's satellite signal, each subscriber must be equipped with digital satellite system hardware, which consists of a

satellite dish, an integrated receiver/decoder ("IRD") and an access card that is necessary to operate the IRD. Through this technology, DIRECTV offers programming including major cable networks, studio movies and special events offered on a pay-per-view basis, local network channels in select areas, and a variety of other sports and special interest programs and packages, some of which DIRECTV has the exclusive right to broadcast via satellite.

3.    DIRECTV does not manufacture digital satellite system hardware. DIRECTV sells programming, most of which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming copyright holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers, and holds exclusive satellite distribution rights in certain of the programming. DIRECTV also creates its own original content programming, for which DIRECTV owns the copyright.

4.    DIRECTV provides different levels of programming to its customers based on the particular subscription package that DIRECTV subscribers purchase. DIRECTV encrypts its satellite transmissions and employs conditional access technology to prevent unauthorized access to its television programming by non-subscribers. The conditional access technology relies in part on "access cards" that are provided to consumers as components of the digital satellite system equipment and which, upon activation by DIRECTV, decrypt DIRECTV's programming and permit the consumer to access and view it. The software code contained in the access cards protects DIRECTV's programming against unauthorized access.

2

5.    Each DIRECTV customer is required to obtain a DIRECTV access card and other system hardware (including a small satellite dish) and create an account with DIRECTV. Upon activation of the access card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

6.    Consumers who have purchased digital satellite system equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly. Subscribers can also order pay-per-view events and movies either by using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

## DIRECTV'S SECURITY SYSTEM

7.    All programming distributed by DIRECTV is delivered to one or both of DIRECTV's broadcast centers in Castle Rock, Colorado, and Los Angeles, California. At the broadcast centers, DIRECTV digitizes and compresses the programming, and encrypts the signal that is sent to its subscribers to prevent receipt of the programming without authorization. DIRECTV then transmits the encrypted signal to multiple satellites located in orbit approximately 22,300 miles above the earth.

8.    The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with digital satellite system dishes and IRDs. The satellite receiving dishes can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business. The signal is received by the dish and transmitted by wire to the IRD. The IRD (boxes that are approximately the size of a

3

VCR player) acts like a computer, which processes the incoming signal using the credit card sized access card.

9.      After a customer installs the dish, IRD, and access card at his or her home or business, the access card blocks access to DIRECTV programming until the customer purchases one or more programming packages from DIRECTV.   When the customer subscribes to a package, DIRECTV electronically activates the subscriber's access card in accordance with that subscription.  The access card then acts as a re-programmable microprocessor and uses "smart card" technology to (a) control which DIRECTV programming the subscriber is permitted to view, and (b) capture and transmit to DIRECTV the subscriber's impulse pay-per-view information.

10.      Because DIRECTV generates its revenues through sales of subscription packages, it must be able to condition access to programming on the purchase of legitimate subscriptions.   Accordingly, DIRECTV devotes substantial resources to the continued development and improvement of its conditional access system.

11.      DIRECTV's need to develop increasingly sophisticated security measures is driven by the actions of satellite television "pirates."   Satellite pirates endeavor to circumvent DIRECTV's security measures to gain unlimited access to all DIRECTV programming, including pay-per-view events, without paying a fee.  Because the access cards are the primary security mechanism relied on by DIRECTV, the modification of access cards using various hardware and software devices designed to disable the access cards' security is the primary focus of satellite piracy.

12.      As part of its ongoing effort to prevent piracy, DIRECTV periodically updates its access cards to improve both functionality and security controls.  DIRECTV's

4

most recent generation of access cards are commonly referred to as "P4" cards.  Prior generations of access cards are commonly known as "H", "P2", "HU" or "P3" cards.

13.    As part of its efforts to combat piracy, DIRECTV periodically develops and administers electronic countermeasures, which are commonly referred to in the satellite piracy community as "ECMs."  ECMs involve sending a stream of data that targets access cards using known modified software code and disables those access cards.

14.    In response to DIRECTV's ECMs, and in particular to a highly successful ECM known in the pirate community as "Black Sunday," satellite pirates have developed devices referred to as, among other things, bootloaders, dead processor boot boards, glitchers, HU loaders, emulators, and unloopers, that employ hardware and software in combination to restore pirate access cards' ability to illegally circumvent DIRECTV's encryption protection and view DIRECTV programming.

15.    DIRECTV's ability to attract and retain subscriber revenues and goodwill, and distribution rights for copyrighted programming, is dependent upon maintaining and securing the integrity of its programming, technology and products, including the access cards and copyrighted programming, and in prohibiting unauthorized reception and use of its protected communications.

## PARTIES

16.    On or about July 1, 2002, DIRECTV obtained business records from Ryan Dellazizzo and Brad Cohen, the operators of multiple internet pirate access sales websites, including "DssBlondie.com," "DssZero.com," "SatUniverse.com," "DssWhiz.com," "ExtremeSatellites.com," "TurboDss.com," and

"SimplySatellites.com" (collectively the "Dellazizzo-Cohen sites"). Importantly, the business records obtained by DIRECTV evidence an ongoing illegitimate enterprise which focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications broadcast by DIRECTV. The records included orders, invoices, electronic communications, shipping documentation, product descriptions and customer lists related to the distribution of Pirate Access Devices. The Dellazizzo-Cohen sites specialized in the sale of pirate access devices and other equipment used to illegally receive DIRECTV's satellite signals, thus enabling users to watch pay per-view television channels without having to pay the broadcasters. Dellazizzo and Cohen were able to conduct business nationwide and across a few countries. The business records obtained evidence the purchases made by the Defendant. Each record obtained confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's satellite programming. More pertinently, the business records obtained evidence the Defendant's purchase(s) of Pirate Access Device(s). The device(s) or item(s) were then shipped to customers via United States mail or commercial carrier. The device(s) in question were primarily of assistance in the unauthorized decryption of DIRECTV satellite programming. In reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the Defendant for his/her purchase, possession, modification, manufacture, assembly, and/or use of Pirate Access Devices.

17.    Plaintiff, DIRECTV, Inc., is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2230 East Imperial Highway, El Segundo, California.  DIRECTV has significant interests in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

18.    Defendant is currently a resident of this District and/or was a resident of this District when this cause of action arose.  DIRECTV alleges that Defendant has purchased and used illegally modified DIRECTV Access Cards and other devices ("Pirate Access Devices") that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV.

19.    Defendant, STEVEN BETRO ("BETRO"), is a resident of Foxboro, MA.  Upon information and belief, BETRO purchased one or more Pirate Access Devices from one or more pirate device dealers as described below.  BETRO placed each order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.  Specifically, these illegal purchases included the following transactions:

a.    On or about September 3, 2001, BETRO purchased one (1) Whiz Board from DSS Whiz.  The order was shipped to BETRO's address in Foxboro, MA.

20.    On or about the dates referenced above, the Defendant actually did purchase and thereafter receive certain electronic devices.

21.    Defendant manufactured, assembled, distributed, and/or sold one or more Pirate Access Devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of

7

DIRECTV's satellite transmissions of television programming, and knowing or having reason to know that such devices, or any components thereof, had been sent through the mail or transported in interstate or foreign commerce. Furthermore, Defendant used the Pirate Access Device(s) to intentionally intercept, endeavor to intercept, or procure others to intercept DIRECTV's electronic communications without authorization.

22.    At all times material hereto, Defendant possessed the requisite digital system hardware ("DSS Hardware"), including satellite dish, integrated receiver/decoder ("IRD"), and/or programming, required to use the illegally modified DIRECTV access card, through which Defendant actually and intentionally intercepted DIRECTV's encrypted satellite transmissions of television programming without authorization or payment to DIRECTV in violation of 47 U.S.C. § 605 and 18 U.S.C. §§ 2510-2521.

23.    Defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521. DIRECTV brings this action to restrain these illegal activities against it.

## SUBJECT MATTER JURISDICTION

24.    This action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

25.    This Court has original federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331; the Communications Act of 1934, as amended, 47 U.S.C. § 605(e)(3)(a), and the Wiretap Act, 18 U.S.C. § 2520(a).

## VENUE

26.    Venue is proper in this District under 28 U.S.C. § 1391(a) because the Defendant is subject to personal jurisdiction in this District by virtue of Defendant's residence in the District. Additionally, venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claim occurred in this District.

## COUNT I
## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS
## IN VIOLATION 47 U.S.C. § 605(a)

27.    Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 26 as if set forth fully herein.

28.    Defendant has received DIRECTV's satellite tr ansmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

29.    Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

30.    Defendant knew or should have known that receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, Defendant will continue to violate 47 U.S.C. § 605(a).

## COUNT II
## UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS
## IN VIOLATION OF 18 U.S.C. § 2511(1)

31.    Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 30 as if set forth fully herein.

32.    Civil causes of action for violation(s) of 18 U.S.C. § 2511 are expressly authorized by 18 U.S.C. § 2520.

33.    By using Pirate Access Devices for purposes of decryption and viewing of DIRECTV's satellite transmissions of television programming, Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. §2511(1)(a).

34.    Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and o ther valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

35.    Defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, Defendant will continue to violate 18 U.S.C. § 2511(1)(a).

## COUNT III
## ASSISTING IN THE UNAUTHORIZED USE/INTERCEPTION SIGNALS IN

## VIOLATION OF TITLE 47 U.S.C. § 605

36.    DIRECTV alleges and incorporates by reference paragraphs 1 through 37 above.

37.    The Defendant distributed one or more Pirate Access Devices to third parties knowing or having reason to know that the Pirate Access Devices are or were primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming in violation of Title 47 U.S.C. § 605(e)(4) and Title 47 U.S.C. § 605(a).

38.    DIRECTV is a person aggrieved by the Defendant's violations of the Title 47 U.S.C. § 605 and is authorized to bring this action pursuant to Title 47 U.S.C. § 605 (e)(3)(A).

39.    The satellite transmissions that make up DIRECTV's signal include interstate radio communications that are protected by Title 47 U.S.C. § 605.

40.    The Defendant distributed one or more Pirate Access Devices to third parties willfully and knowingly in violation of Title 47 U.S.C. § 605.

41.    DIRECTV did not authorize or consent to the Defendant's distribution of Pirate Access Devices to third parties.

42.    The Defendant's violations have injured DIRECTV's ability to generate revenue by depriving DIRECTV of payment for its programming.

### COUNT IV

### ASSEMBLY, MANUFACTURE AND/OR MODIFICATION OF DEVICES OR EQUIPMENT IN VIOLATION OF TITLE 47 U.S.C. § 605

43.    DIRECTV alleges and incorporates by reference paragraphs 1 through 42 above.

44.    The Defendant assembled, manufactured and/or modified existing

equipment knowing or having reason to know that the device(s) thereby created were primarily of assistance in the unauthorized interception or reception of the Plaintiff's satellite television programming in violation of Title 47 U.S.C. § 605(e)(4) and Title 47 U.S.C. § 605(a).

45.    DIRECTV is a person aggrieved by the Defendant's violations of the Title 47 U.S.C. § 605 and is authorized to bring this action pursuant to Title 47 U.S.C. § 605 (e)(3)(A).

46.    The satellite transmissions that make up DIRECTV's signal include interstate radio communications that are protected by Title 47 U.S.C. § 605.

47.    The Defendant assembled, manufactured or modified the Pirate Access Devices willfully and knowingly in violation of Title 47 U.S.C. § 605.

48.    DIRECTV did not authorize or consent to the Defendant's assembly, manufacture or modification of the Pirate Access Devices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)    Find the Defendant's conduct in purchasing, possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a) and (e)(4), and 18 U.S.C. § 2511(1)(a) , and further find that Defendant's violations were willful, malicious or for a tortious or illegal purpose;

(2)    In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1) enjoin and restrain Defendant, and persons controlled directly and indirectly by Defendant, from importing, possessing, or using Pirate Access Devices, and further order Defendant to surrender all Pirate Access Devices;

(3)     In the event of a default, an award of statutory damages of $10,000 for each Pirate Access Device purchased and used in violation of 47 U.S.C. § 605(a), and a further award of DIRECTV's reasonable attorneys' fees and costs in the amount of $850;

(4)     In the event of trial, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2) or (b) compensatory and punitive damages in accordance with 605(e)(3)(C)(i)(I), and 18 U.S.C. § 2520(c)(2); and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3).

(5). Such additional relief as the Court deems just and equitable.

Date

John M. McLaughlin (BBO.: 556328)
MCLAUGHLIN SACKS, LLC
31 Trumbull Road
Northampton, MA 01060
(413) 586-0865

13

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) DIRECTV, Inc. vs. Steven Betro

2004 JUN 22 A 10: 14

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                    740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

   ___    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                  380, 385, 450, 891.

   ___    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                  690, 810, 861-865, 870, 871, 875, 900.

   ___    V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

**None**

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                            YES ☐  NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?  (SEE 28 USC §2403)
                            YES ☐ NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                            YES ☐ NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
                            YES ☐ NO ☒

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                            YES ☒ NO ☐

       1.    IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
           EASTERN DIVISION  ☒      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

       2.    IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

           EASTERN DIVISION  ☐      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ____ John M. McLaughlin

ADDRESS ___ MCLAUGHLIN SACKS, LLC, 31 Trumbull Rd., Northampton, MA 01060

TELEPHONE NO. ____ (413) 586-0865

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## 1. (a) PLAINTIFFS

DIRECTV, Inc.

**DEFENDANTS**

Steven Betro

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ Los Angeles
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ Norfolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John M. McLaughlin
McLaughlin Sacks, LLC, 31 Trumbull Road
Northampton, MA 01060  (413) 586-0865

ATTORNEYS (IF KNOWN)

**1142** T

## II. BASIS OF JURISDICTION     (PLACE AN "X" IN ONE BOX ONLY)

1  U.S. Government Plaintiff

**X** 3  Federal Question
(U.S. Government Not a Party)

2  U.S. Government Defendant

4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES  (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 |  | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders Suits
- 190 Other Contract
- 195 Contract Product Liability

### REAL PROPERTY
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

### TORTS

PERSONAL INJURY
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault Libel & Slander
- 330 Federal Employers Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury

PERSONAL INJURY
- 362 Personal Injury - Med. Malpractice
- 365 Personal Injury - Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

### CIVIL RIGHTS
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- 444 Welfare
- 440 Other Civil Rights

### PRISONER PETITIONS
- 510 Motions to Vacate Sentence
  HABEAS CORPUS:
- 530 General
- 535 Death Penalty
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition

### FORFEITURE/PENALTY
- 610 Agriculture
- 620 Other Food & Drug
- 625 Drug Related Seizure of Property 21 USC 881
- 630 Liquor Laws
- 640 R.R. & Truck
- 650 Airline Regs.
- 660 Occupational Safety/Health
- 690 Other

### LABOR
- 710 Fair Labor Standards Act
- 720 Labor/Mgmt Relations
- 730 Labor/Mgmt Reporting & Disclosure Act
- 740 Railway Labor Act
- 790 Other Labor Litigation
- 791 Empl Ret Inc. Security Act

### BANKRUPTCY
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- 820 Copyrights
- 830 Patent
- 840 Trademark

### SOCIAL SECURITY
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW(405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

### FEDERAL TAX SUITS
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce/ICC Rates/etc.
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 810 Selective Service
- 850 Securities/Commodities/ Exchange
- 875 Customer Challenge 12 USC 3410
- 891 Agricultural Acts
- 892 Economic Stabilization Act
- 893 Environmental Matters
- 894 Energy Allocation Act
- 895 Freedom of Information Act
- 900 Appeal of Fee Determination Under Equal Access to Justice
- 950 Constitutionality of State Statutes
- **X** 890 Other Statutory Actions

## V. ORIGIN     (PLACE AN "X" IN ONE BOX ONLY)

**X** 1 Original Proceeding

2 Removed from State Court

3 Remanded from Appellate Court

4 Reinstated or Reopened

5 Transferred from another district (specify)

6 Multidistrict Litigation

7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U. S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

47, USC 605 and 18 USC 2510-2521, unauthorized interception of satellite telecommunications signals and/or assistance in said unauthorized interception.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $10,000.00

CHECK YES only if demanded in Complaint
JURY DEMAND:   YES   **X** NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____     DOCKET NUMBER _____

DATE  6/18/04

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____